No. 2329.—Succession of ISABELLA GRANT—J. A. PEEL *v.* DAVID GRANT, Administrator.

The administrator, in answer to a suit to enjoin the sale of property inventoried as belonging to the succession, may allege and show the simulated character of the plaintiff's title. If, however, it be shown on trial that the plaintiff's title was fraudulent, but not simulated, then, and in that case, the administrator could only have its nullity pronounced by direct action.

APPEAL from the Second District Court, parish of Orleans. *Duvigneaud*, J. *Hornor & Benedict* and *G. L. Hall*, for plaintiff and appellant. *T. A. Bartlette*, for defendant and appellee.

TALIAFERRO, J. The defendant having received the appointment of administrator of the estate of his deceased daughter, Isabella Grant, and caused an inventory of her succession to be taken, the plaintiff, who alleged that he was the owner of the property inventoried and claimed to have possession of it, sued out an injunction to restrain the administrator from interfering with it, and prayed in his petition that he have judgment recognizing his ownership and that the injunction be perpetuated.

The administrator answered by a special denial of the alleged ownership of the plaintiff and charged that if any sale of the property was ever made to him by the decedent, as pretended by plaintiff, the same was without consideration and gotten up through fraud by the plaintiff and one Kidder, then in the employ of the deceased, who was in a dying condition and in the immediate prospect of death. He prayed that the plaintiff's demand be rejected and for general relief, etc.

The defendant had judgment in his favor, and the plaintiff appealed.

An exception was taken to the ruling of the court below, refusing to strike out that part of the defendant's answer which alleges fraud in the sale from Isabella Grant to John A. Peel, and averments having in view an annullment of the sale, and to the admission of evidence

to sustain these allegations, on the ground that the defendant in injunction could only attack the validity of the sale by a revocatory action. The plaintiff relies upon the case of Zuberbier *v.* Dryfus, 21 An. 271, in which the sale of personal property was made by notarial act and accompanied by actual delivery. It was found in that case that the sale was real and the court decided that, although fraudulent, it could not be indirectly attacked. In this case we think there are many of the indicia usually found in simulated contracts. The delivery of the property to Peel is not clearly established. The witnesses Meyne, Clarke and Leefe, clerks of Henning, the grocer, living quite near the Waverly House, and from whose grocery supplies of provisions were furnished the boarding house, say that the business of Miss Grant with the grocery continued to the time of her death and was carried on in her name, and that Kidder was attending to the business for her up to the time of her death; Clarke says he understood so both from Kidder and Miss Grant.

Mazureau, the notary who made the inventory, testifies that upon presenting the order he held for making the inventory of Miss Grant's property at the Waverly House, Kidder remarked that the deceased had not been properly named, that she was his wife. He showed the effects to be inventoried and they were entered upon the inventory as belonging to the succession of Isabella Grant. To this Kidder made no objection. The notary further stated that Kidder did not name a third party as owner of the property; that he claimed it as his own, saying that David Grant, the father of Isabella Grant, had nothing to do with it.

The evidence discloses that Isabella Grant, an unmarried woman, having no descendants, had for a considerable time previous kept the boarding house known as the Waverly House, in Camp, at the corner of Poydras street; that she had long been laboring under a pulmonary disease and for a month or two previous to her decease was prostrate, and most, if not all, that time so enfeebled that she was incapable, physically, to attend to business; that Kidder attended to the business of the house for her; that about thirty-six hours before her death Kidder married her. A written instrument purporting to be a sale of the furniture of the Waverly House to Peel by Miss Grant was shown, and also a transfer by her to Peel of her lien of the premises. The sale is dated October 27, 1868, and the transfer of the lease December 7 of the same year. Miss Grant died on the twentieth of the same month and year. A showing is made of the payment of money by Peel as the price of the purchase, and he states that he then went into possession and constituted Kidder his agent to carry on the business. Under cross-examination his answers show that he took but little or no interest in the business of the Waverly House and appears to have

known very little about it. Miss Grant, after the sale, went to stay a short time at the house of a Mrs. Brown, on Bacchus street, but returned to the Waverly House, where she remained until her death. Kidder, by his own statement, could not safely own property, as he was much in debt at the time, and afterwards took the benefit of the bankrupt law.

David Grant, the father of Isabella Grant, was a forced heir of his daughter, and these impediments, it would appear, were in the way of a donation by Miss Grant of all her property to the man she married almost in her dying moments. Under such circumstances the interposition of a fraud would readily suggest itself. Peel, it is shown, is a merchant of large business, who was in the habit of boarding at the Waverly House at times, when his family were absent from the city. He was well acquainted with Miss Grant and with Kidder. The indifference he appears to have manifested in the affairs of the Waverly House after his purchase, shows that he felt no great interest in the acquisition.

A full review of the evidence in this case induces us to conclude that there was no real and actual sale, and that the pretended sale was a mere simulation gotten up for the benefit of Kidder and to deprive the plaintiff from obtaining the succession of his daughter.

The exception was properly overruled and the judgment correctly rendered.

It is therefore ordered, adjudged and decreed that the judgment of the district court be affirmed, with costs.